UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
TREVOR BURNS,                                          :
                                                       :      08 CV 8624
                                    Plaintiff,         :      **AMENDED**
                                                       :      **OPINION & ORDER**
                 -against-                             :
                                                       :
R. ERCOLE,  Superintendent, Green Haven                :
Correctional Facility,                                 :
                                                       :
                                    Defendant.         :
------------------------------------------------------------------------x

**Hon.  HAROLD BAER, JR., District Judge:[1]**

On November 14, 2008, pro se petitioner Trevor Burns ("Petitioner") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges two grounds for relief.  First, Petitioner claims the state court erred in denying his claim that the trial court violated his constitutional right to present a defense by refusing to admit evidence under New York's hearsay exception allowing admission of statements against penal interest.  Second, Petitioner claims the state court erred in denying his claim for ineffective assistance of appellate counsel when his appellate counsel failed to argue that Petitioner's trial counsel had previously been ineffective.  For the following reasons, this petition is denied.

## I. BACKGROUND

Petitioner's case originates out of the shooting death of Corey Henderson that took place on the night of June 13, 1995.  Petitioner previously had a dispute with Henderson's cousin, John Mitchum, and had threatened him. Tr. 1022-36.  Witnesses reported seeing Petitioner and his codefendants handling firearms near the scene of the shooting and that  they had shot at Mitchum and Henderson.  Tr. 289-90, 1042-43.  Police pursued one of the men  into a nearby building, Tr. 515-17, and found Petitioner lying in the fourth floor hallway with a gunshot wound to the foot.  They also saw a modified, but inoperable, starter pistol lying nearby, which showed signs that someone had attempted to fire it.  Tr. 121-126, 242-49, 520-21, 547-48, 550-52, 840-49.

---

[1]Jason Douglas Barnes, a fall 2010 and spring 2011 intern in my chambers, provided substantial assistance in drafting this opinion, with research assistance by John Miller, a summer 2010 intern.

1

When questioned by police, Petitioner repeatedly claimed that a group of Hispanic men in hoods shot at the victims and at Petitioner in retaliation for an argument that took place on the previous day.  Tr. 778-83, 879-84.  However, after receiving evidence of crossfire at the shooting and taking contradictory statements by Mitchum and Petitioner's codefendants, the police arrested Petitioner as a suspect in connection with the shooting of Corey Henderson when he returned for questioning on April 9, 1996.  Tr. 128-29, 1521-22, 1557-59, 1626-30, 1807-08, 1107-08.  According to NYPD Officer Zarakas, Petitioner explained that he and his codefendants shot at the victims, Mitchum returned fire, and Petitioner fled—but Petitioner refused to sign a written statement confirming this story.  Tr. 1636-46, 1759-61.

The state charged Petitioner with three counts of second-degree murder and two counts of weapons possession.  During the trial, Petitioner maintained that a group of Hispanic men were the shooters, although Petitioner did not testify.  To support Petitioner's case, Petitioner's friend, Keith Spruill, testified that he spoke to Petitioner outside of a nearby store before the shooting, heard gunshots soon after, and saw three Hispanic men fleeing.  Tr. 2137-44.  Petitioner also sought to admit a statement by Raul Marin,[2] an unavailable witness, through a transcription that NYPD Officer Lozada made on June 14, 1995.  According to the statement, Marin had seen five armed men, whose names he knew, one block away from the scene of the shooting.  One of the men handed Marin three bags of heroin and told him that he should leave, so that the men could discuss "something" they had to do that night.  Marin left and soon heard gunshots.  The next day, one of the men told Marin that "last night we took care of business."  Tr. 1683.

The trial court ruled that Marin's statement was inadmissible hearsay and did not qualify for the "against the penal interest" exception to the hearsay rule because the only portion of the statement that was arguably against the declarant's penal interest was the portion referring to the bags of heroin, and that portion was not relevant to the trial.  On June 17, 1997, a jury found Petitioner guilty of murder in the second degree.  Petitioner maintains that Marin's statement would have corroborated Spruill's.  Tr. 1419-20.

Petitioner filed a direct appeal, claiming that Marin's statement should have been admitted as a hearsay exception and its exclusion denied Petitioner his constitutional right to present a defense.  *See People v. Burns*, 795 N.Y.S.2d 574 (App. Div. 2005).  Petitioner's claim

---

[2] Throughout the record, the witness is referred to as Raul Marin, Raul Morin, and Raul Muniz.  For the purposes of this opinion, he will be referred to as Raul Marin.

was denied and he appealed. The New York Court of Appeals affirmed, holding that Petitioner's right was not violated because the hearsay statement "lacked any indicia of reliability" and because the trial court offered Petitioner a "so ordered" subpoena to compel Marin's testimony, which the Petitioner never served. *People v. Burns*, 6 N.Y.3d 793, 795 (2006).

On March 3, 2006, Petitioner filed a motion to vacate the judgment pursuant to N.Y. C.P.L.R. § 440.10, claiming, among other things, that he received constitutionally ineffective assistance from his trial counsel; that motion was subsequently denied. *People v. Burns*, No. M-2192, Ind. No. 3038/96 (N.Y. Sup. Ct. Feb. 28, 2007) (Answer Ex. J), *appeal denied*, 2007 N.Y. App. Div. LEXIS 8927 (N.Y. App. Div. Aug. 9, 2007). On August 4, 2008, Petitioner applied for writ of error coram nobis in the New York Supreme Court, Appellate Division, alleging ineffective assistance of appellate counsel. On November 14, 2008, Petitioner filed the present petition for writ of habeas corpus, which was held in abeyance until he had exhausted his state remedies. *People v. Burns*, No. M-3786, Ind. No. 3038/96, (N.Y. App. Div. Dec. 9, 2008), *appeal denied*, Ind. No. 3038/96 (N.Y. Feb. 18, 2009) (Answer Ex. O).

## II. STANDARD OF REVIEW

A petitioner under § 2254 is only entitled to relief on claims adjudicated in state court that: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254 provides a highly deferential standard, giving state decisions "the benefit of the doubt." *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010).

An adjudication is "contrary to federal law," if it "arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 13 (2000). An "unreasonable application of federal law" occurs when "the state court identifies the correct governing legal principle from [the U.S. Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The decision must have also been "objectively unreasonable," *id.* at 364, meaning "somewhere between merely erroneous and unreasonable to all reasonable jurists," *Henry v. Poole*, 409 F.3d 48, 68 (2d Cir. 2005) (internal quotation omitted).

## III. DISCUSSION

### A. Right to Present a Defense

Petitioner argues that the preclusion of Marin's out-of-court statement is contrary to established federal law or unreasonably applies federal law with respect to Petitioner's due process right to present a meaningful defense.

Marin's excluded out-of-court statement was neither relevant and material nor vital to Petitioner's defense. *See Washington v. Texas*, 388 U.S. 14, 16 (1967). Further, the chain of inferences linking Marin's statement to Petitioner's defense was tenuous, because, as the trial court noted, the statement does not even indicate that the individuals mentioned were involved in the crime. Tr. 1941. The statement reports a conversation that happened several blocks from the crime scene and does not explicitly mention a shooting at all, let alone anything specific to the shooting in this case. *C.f. Jimenez*, 458 F.3d at 148 (finding the chain of inferences linking suppressed heroin evidence was too tenuous).[3] Marin's statement would have been stacked against direct testimony from multiple witnesses that Petitioner participated in the shooting as an aggressor, Tr. 290-93, 302-06, 343, 468, 1042-44, 1163-69, 1200, 1212-14, 1238, direct testimony from two officers on foot patrol who, after seeing someone firing a gun and following him and his companion into a building, found Petitioner with a gunshot wound and a pistol, Tr. 41-51, 59-65, 74-88, 507-50, 526-32, 539-41, 564-67, 612, 642-647, 697-707, and Mitchum's direct testimony establishing Petitioner's intent, Tr. 1022, 1035-36. Therefore, Marin's statement was not material or vital to the defense, and as the appellate court concluded, the excluded evidence would not have created a "reasonable doubt" as to Petitioner's guilt. *See Jimenez*, 458 F.3d at 146 (holding that tenuous chain of events linked to excluded evidence would not have created a reasonable doubt).

### B. Ineffective Assistance of Counsel Claim

Petitioner argues that his appellate counsel was constitutionally ineffective for not having raised an ineffective assistance of counsel claim concerning several alleged failures of his trial counsel. Petitioner claims that the state court decision denying his writ of error coram nobis on this claim was contrary to or unreasonably applied the clearly established federal standard. However, the New York standard, applied in the underlying state decision, is not contrary to the

---

[3] The only other link provided was testimony from Spruill, who claimed to have seen Hispanic men fleeing the crime scene.

federal law and, in fact, offers greater protection than the federal provision for effective assistance.  *See Rosario v. Ercole*, 601 F.3d 118, 123-26 (2d Cir. 2010); *Poole*, 409 F.3d at 55-56.  Because the New York standard is not contrary to the federal standard, "the only avenue of reprieve... is to establish that the state court unreasonably applied [the federal standard]." *Rosario*, 601 F.3d at 126.  Petitioner must "satisfy the [federal standard] on *de novo* review of the merits [and] must show more than simply that he meets [the standard] . . . .  [T]he state court's decision rejecting his claim is to be reviewed under a more deferential standard than simply whether that decision was correct."  *Id.* at 125-27 (internal quotations omitted).

For a claim of ineffective assistance of appellate counsel, Petitioner must show that "counsel was objectively unreasonable in failing to… discover nonfrivolous issues and to file a merits brief raising them.  If [Petitioner] succeeds in such a showing, he then . . . must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal."  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984)).  The Court "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case.'"  *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 446 U.S. at 689).

*1. Objective Reasonability in Failing to Find Issues on Appeal*

Petitioner argues his appellate counsel was objectively unreasonable for failing to raise an ineffective assistance of counsel claim against his trial counsel.  However, appellate counsel had no grounds to accuse the trial counsel of ineffectiveness, because trial counsel won dismissal of the weapons charges against Petitioner and preserved the evidentiary and constitutional claims regarding Marin's statement for review.  This finding is strengthened by the fact that the state court has already reviewed trial counsel's performance for ineffectiveness once and found none. *See Burns*, Ind. No. 3038/96 (N.Y. Sup. Ct. Feb. 28, 2007) (Answer Ex. J); *Larrea v. Bennett*, 368 F.3d 179, 183 (2d Cir. 2004) (if trial counsel acted within the range of objectively reasonable competency, "appellate counsel cannot be faulted for failing to argue ineffective assistance").

Petitioner argues more specific reasons that his trial counsel was ineffective, which, he claims, should have been briefed by appellate counsel.  None of his reasons are sufficient to

5

render appellate counsel's conduct unreasonable.  First, Petitioner's argument that trial counsel failed to request a bill of particulars is unsubstantiated because, as the State points out, he made requests that resulted in the State filing a Voluntary Disclosure Form.  Second, Petitioner's argument that trial counsel failed to object to an alleged variance between the indictment's charges and proof at trial is also unsubstantiated because there was no such variation.  Petitioner was indicted as a principal, with accompanying weapons charges, and convicted as an accessory, which does not require that he have carried a weapon.  Tr. 8-9, 2446, 2461-62; *see People v. Rivera*, 84 N.Y.2d 766, 771 (1995) (indictment as a principle and conviction as an accomplice does not alter the theory of liability).  Third, Petitioner's contention that that trial counsel failed to file a motion to dismiss either count one or two of the indictment as multiplicitous is unsubstantiated because the grand jury charged Petitioner with three alternate theories of murder, each with differing intent elements,[4] and the jury was instructed that only one theory could prevail.  Tr. 2379-81; *see People v. Demetsenare*, 243 A.d.2d 777, 779-80 (N.Y. App. Div. 1997) ("Multiplicity does not exist, however, 'if each count requires proof of an additional fact that the other does not.'").  Fourth, Petitioner's argument that trial counsel should have objected to the verdict as repugnant is also unpersuasive because the jury was charged with separate counts identifying different intended targets, so acquittal on one was not conclusive as to the other.  Tr. 2379-85; *see People v. Trappier*, 87 N.Y.2d 55, 58 (1995) (repugnance exists where acquittal on one crime as charged to the jury is conclusive as to a necessary element of the other).  Fifth, Petitioner's argument that trial counsel should have obtained ballistic evidence of the bullet retrieved from the victim is unavailing because the State's theory was not predicated on Petitioner personally firing the shot, but rather on his status as an accessory.

   *2. Prejudice*

Because Petitioner does not prove prong one of the *Robbins/Strickland* standard, there is no need to consider the second prong.  *See Robbins*, 528 U.S. at 285; *Strickland*, 466 U.S. at 467. However, I note that Petitioner likely did not experience prejudice as a result of his appellate counsel's failure to raise a claim of ineffective assistance against trial counsel because Petitioner later raised the identical claim in his rejected state CPL § 440.10 petition—making the same five

---

[4] Each of the three counts had a different intent element: (1) Petitioner, "intending to cause the death of John Mitchum…, caused the death of Corey Henderson," Tr. 8; (2) Petitioner, "intending to cause the death of Corey Henderson…, caused the death of Corey Henderson," Tr. 9; and (3) Petitioner "recklessly engaged in conduct which created a grave risk of death to another person and thereby caused Corey Henderson's death," Tr. 9.

arguments as are made in the instant petition.  *See Burns*, Ind. No. 3038/96 (N.Y. Sup. Ct. Feb. 28, 2007) (Answer Ex. J).

> *3. Evidentiary Hearing*

Petitioner also requests an evidentiary hearing to develop the factual basis of his claim for ineffective assistance of appellate counsel.  Traverse ¶ 35.  28 U.S.C. § 2254(e) lays the foundation for when an evidentiary hearing on a particular claim may occur.  First, the factual findings of the state court are presumed to be correct. Second, a hearing may only proceed if the claim relies on a new Supreme Court rule of constitutional law or there exists a factual predicate that could not previously have been discovered through due diligence.  Additionally, the underlying facts must be  "sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e).  Petitioner does not argue that these circumstances are present and therefore his request is denied.

## C. *Brady* Violation

Petitioner also asserts that the Prosecution never provided a ballistics report to his trial counsel, in violation of the *Brady* rule, because his counsel never confirmed receipt of the report.  Traverse ¶ 36.  A *Brady* violation sufficient for this Court to grant this Petition only exists if the evidence is material to the defense, meaning "there is a 'reasonable probability' that a different verdict would have resulted from the disclosure of the information."  *United States v. Rodriguez*, 496 F.3d 221, 227 (2d Cir. 2007) (citing *Strickler v. Greene*, 527 U.S. 263, 281 (1999)).  Even assuming that the State did fail to provide the report, it would not constitute a *Brady* violation because, as was discussed above, the ballistics evidence was not relevant to the murder charges.

## IV.  CONCLUSION

For the above stated reasons, Petitioner's petition for writ of habeas corpus is DENIED.  Petitioner's request for an evidentiary hearing is DENIED.  The Clerk of Court is directed to close this case and remove it from my docket.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).  As the Petition

makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253.

**SO ORDERED.**

New York, New York
September 9, 2011

_____
Hon. Harold Baer, Jr.
U.S.D.J.